UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Michael Segura,<br><br>            Plaintiff,<br><br>    v.<br><br>Zurich American Insurance Company, *et al.,*<br><br>            Defendants. | Case No. 2:21-cv-01086-JAD-BNW<br><br>**Report and Recommendation re ECF No. 19** |

Before the Court is Defendant Zurich American Insurance Company's Motion to Enforce a Settlement Agreement and for Sanctions.[1] ECF No. 19.[2] Plaintiff Michael Segura filed a "limited opposition" at ECF No. 20, and Defendant replied at ECF No. 23.

**I.    Background**

Plaintiff's suit alleges claims relating to a 2017 motor-vehicle accident. ECF No. 1-2.

The parties held a mediation on February 14, 2022, whereby they stipulated to dismissing the case. ECF No. 22-2 at 2. In exchange for dismissal, Defendant would pay Plaintiff a certain monetary sum, and Plaintiff would receive this payment within two weeks of Defendant obtaining the executed Release. *Id*. Defendant would be responsible for providing Plaintiff with both the Release and dismissal documents. *Id*. at 3. Additionally, Plaintiff would be responsible for resolving "outstanding [m]edical or [o]ther [l]iens[.]" *Id*.

Although these facts are undisputed, the parties are at an impasse regarding the warranty language Defendant included in Section 5 of the Release.[3] Whereas Defendant argues that this

---

[1] Defendant Sedgwick Claims Management Services was dismissed from this action with prejudice on October 27, 2021. ECF No. 14.
[2] A corrected image of this motion is filed at ECF No. 22. The Court will cite to ECF No. 22 for purposes of this Order.
[3] When referring to the Section 5 language, the Court is referring to the following contested language:
   Should it later be determined that Releasor was, in fact, either receiving or entitled to receive Social Security Disability and/or Medicare benefits at the time that this Release is executed, Releasor agrees to reimburse the Releasees and/or their attorneys and/or Medicare for any valid claim or lien asserted by Medicare, and will indemnify, defend, and hold the Releasees and/or their attorneys harmless from any such claims, including payment of any interest, costs or attorneys' fees incurred by the Releasees in connection with such

1

language is a "standard provision in nearly all bodily injury releases[,]" Plaintiff submits that this language is "too broad" with "unknown and too far reaching" ramifications. ECF No. 23 at 2; ECF No. 20 at 3. In line with their positions, Defendant seeks the Court to enforce the February 14 settlement agreement, including ordering Plaintiff to sign the Release as it is currently written (with the disputed Section 5 language) whereas Plaintiff requests that he sign the Release only once the disputed Section 5 language is removed.

**II.      Analysis**

      **A.      Whether the Court has jurisdiction to enforce a settlement agreement**

A federal court does not have inherent power to enforce settlement agreements entered into by parties. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014). But it is "well established" that the court has authority to enforce a settlement agreement in litigation pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

Here, the litigation between the parties is pending before the Court. As a result, it has the authority to enforce this settlement agreement.

      **B.      Whether an enforceable settlement agreement exists**

A settlement is a contract. *Knudsen v. Comm'r*, 793 F.3d 1030, 1035 (9th Cir. 2015) (citing *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1989)). Both its construction and enforcement are governed by principles of state contract law. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) (citations omitted).

Here, the Court must examine Nevada law to determine whether the parties to this action reached an enforceable agreement.

---

claims or liens . . . . Should it later be determined that Releasor was, in fact, either receiving or entitled to receive such benefits at the time that this Release is executed, Releasor agrees to reimburse the Releasees and/or their attorneys and/or the claiming governmental agency for any valid claim or lien asserted by said governmental agency, and will indemnify, defend and hold the Releasees and/or their attorneys harmless for any such claims, including the payment of any interest, costs or attorneys' fees incurred by the Releasees in connection with such claims or liens.

Notably, the Court finds no issue with the attestations found at Section 5(a) –5(e), as they are limited to events related to the subject accident and underlying lawsuit. ECF No. 22-3 at 4–5. These include the following statements: (a) Plaintiff is not a Medicare beneficiary; (b) Plaintiff has not received any payments from Medicare in connection with this incident or otherwise; (c) Plaintiff is a Medicaid beneficiary and he will satisfy any liens arising out of this incident; and (d)–(e) Plaintiff previously applied for Social Security Disability Benefits, he was denied, and he does not anticipate appealing the decision. *Id.*

Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 121 Nev. 668, 672 (2005). "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 378 (2012) (citation omitted). "Which terms are essential [i.e., material] depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Id*. (internal quotation marks and citation omitted).

Importantly, a contract can be formed even when the contract's exact language has not been finalized so long as the parties have agreed to the material terms. *May*, 121 Nev. at 672. But a court cannot enforce a settlement agreement when "material terms remain uncertain." *Id*. This is because the court "must be able to ascertain what is required of the respective parties." *Id*.

Here, the Court finds that the parties' stipulation at the February 14 mediation constituted an enforceable settlement. It finds that the parties agreed to the material terms of how much Defendant would pay Plaintiff, when Defendant would pay Plaintiff, and who would be responsible for any outstanding liens. ECF No. 22-2.

However, the Court also finds that Section 5 of the Release that Defendant drafted includes new and material terms. These terms hold Plaintiff responsible for payment and indemnification regarding "*any* valid claim or lien asserted by Medicare" or another governmental agency. ECF No. 22-3 at 3.

The Court agrees with Defendant that it must comply with the Medicare Secondary Payer Act and protect itself "from potential exposure to Medicare as a secondary payer to a bodily injury claimant" and from possibly paying this claim twice. ECF No. 23 at 2, 4. But such protections must be narrowly tailored to the underlying cause of action. Defendant argues that this language is "actually very narrowly tailored" because it "only applies" if it is "later determined that Plaintiff" was receiving or entitled to receive Medicare or Social Security Disability. *Id*. at 4. Defendant is correct in noting that this clause is triggered upon these circumstances. But Defendant fails to acknowledge Plaintiff's exposure if the clause is triggered. As it currently reads, Section 5 burdens

Plaintiff with reimbursing and indemnifying Defendant (three other corporate entities, defense counsel, and Medicare) for "*any* valid claim or lien asserted by Medicare[.]"[4] ECF No. 22-3 at 2, 5. Considering that the parties stipulated to Plaintiff being responsible for all liens, it becomes clear that Plaintiff did not agree to this language at the time of the mediation. ECF No. 22-2 at 2. Plaintiff asking Defendant to modify the warranty language once he received the initial draft of the Release also indicates that he did not agree to this language. ECF No. 20 at 2. Although Defendant made the requested changes, Plaintiff requested additional changes because of his concern that the warranty language is overbroad and creates unknown and far-reaching financial exposure. *Id*. at 2–3.

Put another way, the Section 5 language requiring payment and broad indemnification cannot be considered general warranty language and part of the parties' February 14 stipulation because it extends to *any* valid claims or liens rather than simply to those claims or liens relating to the 2017 motor-vehicle accident or this lawsuit. *See Davis v. Am. Standard Ins. Co. of Wisconsin*, No. 2:15-CV-04136-NKL, 2015 WL 6742120, at *2–3 (W.D. Mo. Nov. 2, 2015) (explaining that terms regarding payment of Medicare liens and indemnification qualify as material, "essential" terms and "not simply minor details"). And the parties' stipulation and subsequent conversations reveal that the parties did not reach a meeting of the minds regarding this new and material term.

If Defendant wanted this Section 5 language to form part of its settlement of Plaintiff's claims, it should have secured Plaintiff's agreement and included these terms in the February stipulation. Notably, the February stipulation, which was signed by both parties, included a text box for other terms as well as an option to include additional pages in outlining the "terms and conditions of this agreement[.]" ECF No. 22-2 at 2–3. The text box was left empty, and no additional pages were attached. *See* ECF No. 22-2.

Whereas it is undisputed that the parties agreed to settle this matter in exchange for a certain monetary amount to be paid at a specified date, the Court cannot deem the disputed

---

[4] To clarify, Section 5 provides that Plaintiff would be responsible for reimbursing but not indemnifying Medicare. ECF No. 22-3 at 5.

4

Section 5 language part of the parties' stipulated agreement "as it significantly alters the parties' agreement, in ways detrimental to Plaintif[f] . . ." *Bone v. Univ. of N. Carolina Health Care Sys.*, No. 1:18CV994, 2022 WL 1444406, at *7 (M.D.N.C. May 6, 2022) (recommending enforcement of a stipulated agreement without the new and material terms). Rather, it finds that the Section 5 language "overreached in terms of what had been negotiated." *Davis*, 2015 WL 6742120, at *3 (internal quotation marks and citation omitted).

Accordingly, the Court finds that the February 14 stipulation constitutes an enforceable settlement agreement between Plaintiff and Defendant. It further finds that Defendant's proposed Section 5 language qualifies as a material term that was not agreed upon in the February 14 stipulation. Moreover, it finds that removal of that language would otherwise make the agreement enforceable. In light of these findings, the Court recommends that the District Judge deny Defendant's motion to enforce.

### C.  Sanctions

A court has inherent power to sanction a party if it acts in "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]" *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (internal quotation marks and citation omitted). A court also can sanction a party for "willful abuse [of the] judicial processes." *Id*.

The Court recommends that the District Judge deny Defendant's motion to enforce. In any event, it does not find that Plaintiff acted in bad faith. This is not a case of buyer's regret or an example of a party acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." Rather, this is a case where Plaintiff simply asked for a certain clause of the agreement to be removed because of his concern for the exposure the clause would create. As a result, sanctions are not warranted.

//

//

//

### III.  Conclusion and Recommendation

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Enforce a Settlement Agreement (ECF No. 19) be DENIED.

### IV.  Notice

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this R&R may file a written objection supported by points and authorities within 14 days of being served with it. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: October 17, 2022.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE